**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NORMA DAMOUNI,

        *Plaintiff*,

        v.

CITIMORTGAGE, INC. and CENLAR FSB,

        *Defendants*.

Civil No.: 20-cv-1065 (KSH) (CF)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

I.      **Introduction**

This matter comes before the Court on the motion brought by defendant Citimortgage, Inc. to dismiss plaintiff Norma Damouni's complaint with prejudice. (D.E. 81.) After acting as Damouni's mortgage servicer for her home, Citimortgage sought and obtained a foreclosure judgment against her in state court in January 2019. A few months later, Citimortgage transferred Damouni's mortgage servicing to defendant Cenlar FSB (together with Citimortgage, "defendants"). In January 2020, Damouni filed the operative complaint, alleging that Citimortgage violated federal and state law in its handling of a loss mitigation application she made in April 2018, and that Cenlar violated federal and state law in its handling of her June 2019 loss mitigation application. (D.E. 1.) For the reasons set forth below, the Court finds that Damouni's claims against Citimortgage are barred by the entire controversy doctrine and must be dismissed.

## II.    Background[1]

On September 20, 2007, Damouni and her late husband obtained a mortgage loan from Citizens Commercial Bank for $700,000 to buy a home in Fort Lee, New Jersey.  (D.E. 81-2, Declaration of Gregory Reid ("Reid Decl.") ¶¶ 2-3 & Exs. A, B.)  The mortgage was secured by a promissory note, later made payable to Citimortgage, and had a maturity date of October 1, 2037.  (*Id.* at Exs. B, C.)  Damouni's husband died in October 2009, and she went into default on her mortgage in October 2016.  (*See* D.E. 1, Compl. ¶ 20 & Ex. B.)  At some point, her daughter and nephew moved into the house to help her financially.  (*Id.* ¶ 20.)

In April 2018, Citimortgage filed a state court foreclosure action.  *CitiMortgage, Inc. v. Norma Damouni, et al.*, SWC-F-007003-18.  (D.E. 81-2, Reid Decl. ¶ 6 & Ex. E.)  Also in April 2018, Damouni submitted a loss mitigation application to Citimortgage, seeking to modify her mortgage.  (*See id.* ¶¶ 17, 20-21, 45.)  Over the next year, Citimortgage neither granted nor denied her application.

On January 17, 2019, Citimortgage obtained a final judgment of foreclosure in its state court action, which ordered a sheriff's sale of Damouni's property.  (D.E. 81-2, Reid Decl. & Ex. E, at 1-2.)  Later that month, Citimortgage changed the employee managing Damouni's application from Anthony Garcia to Randal Howland; Howland "failed to respond to emails or provide updates" on the application.  (D.E. 1, Compl. ¶¶ 21-23.)  In April 2019, Citimortgage transferred the servicing of Damouni's mortgage and loss mitigation application to Cenlar.  (*Id.*

---

[1]  The Court may consider the mortgage agreement and promissory notes attached as Exhibits A, B, and C to Citimortgage's motion to dismiss as they are integral to Damouni's claims.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).  It may also take judicial notice of the final foreclosure judgment attached as Exhibit E to Citimortgage's motion to dismiss, as Damouni has not disputed the authenticity of this document.  *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999).

¶ 24.)  In June 2019, Damouni filed a loss mitigation application with Cenlar.  (*Id.* ¶ 25 & Ex. B.)

On January 30, 2020, Damouni filed the within lawsuit, alleging that Citimortgage and Cenlar failed to evaluate her loss mitigation applications and failed keep her informed about them.  (D.E. 1.)  She claims these actions violate Regulation X, 12 C.F.R. § 1024, which was promulgated by the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* (Count One), and that they constitute "unfair or deceptive practices in violation of" the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1, *et seq.* (Count Two).  (*Id.* ¶¶ 3, 35-47, 48-62.)  Cenlar answered.  (D.E. 23.)  Citimortgage moved to dismiss.  (D.E. 6.)

Under the direction of Magistrate Judge Cathy Waldor, the parties attempted to settle the case, providing periodic updates on the status of Damouni's loss mitigation application that Cenlar was reviewing.  (*See generally* Docket.)  Due to these settlement efforts, in January 2021 Judge Waldor administratively terminated Citimortgage's motion to dismiss.  (D.E. 24.)  On October 11, 2023, Judge Waldor administratively terminated the case to give Cenlar and Damouni sufficient time to review and complete Damouni's loss mitigation application.  (D.E. 49.)  In February 2025, Judge Waldor learned that the loan modification process had concluded "without success," and she ordered the Clerk of the Court to reinstate the matter and directed Citimortgage to refile its motion to dismiss.  (D.E. 79.)

Citimortgage timely refiled.  (D.E. 81.)  Its chief argument is that the entire controversy doctrine requires dismissal because Damouni could have, but did not, raise these claims back in the 2018-2019 state foreclosure action.  (*Id.* at 9-12.)  Citimortgage alternatively argues that the complaint is barred by the *Rooker-Feldman* Doctrine, that it fails to state a claim for violation of

RESPA or Regulation X, and that its fraud allegations lack specificity as required by Rule 9(b).
(*Id.* at 12-28.)

## III. Discussion

The entire controversy doctrine is an affirmative defense that may be considered as grounds for dismissal on a motion to dismiss if its application is clear from the face of the complaint and from documents properly considered on a Rule 12(b)(6) motion. *Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 280 & n.52 (3d Cir. 2016); *Siljee v. Atl. Stewardship Bank*, 2016 WL 2770806, at *6 (D.N.J. May 12, 2016) (McNulty, J.).

The entire controversy doctrine is "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Shibles v. Bank of Am., N.A.*, 730 F. App'x 103, 106 (3d Cir. 2018) (quoting *Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015)). It "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." *Id.* (quoting *Wadeer v. N.J. Mfrs. Ins. Co.*, 220 N.J. 591, 605 (2015)); *see Vasquez Rodriguez v. Wells Fargo Bank, N.A.*, 2019 WL 1529846, at *4 (D.N.J. Apr. 9, 2019) (Vazquez, J.) ("Similar to res judicata, the entire controversy doctrine 'extinguishes any subsequent federal-court claim that could have been joined but was not raised in the prior state action.'" (quoting *Siljee*, 2016 WL 2770806, at *6)).

New Jersey Court Rule 4:30A, which codifies the entire controversy doctrine, provides that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions)[.]" New Jersey Court Rule 4:64-

5, in turn, limits the entire controversy doctrine's application in foreclosure actions to "germane" counterclaims. "Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court." N.J. R. 4:64-5. Accordingly, "if a claim was not germane, it need not have been brought in the prior foreclosure action and would not be subject to the entire controversy doctrine." *Vasquez*, 2019 WL 1529846, at *4.

A claim is germane if it "arise[s] out of the mortgage that is the basis of the foreclosure action." *Coleman v. Chase Home Fin., LLC*, 446 F. App'x 469, 472 (3d Cir. 2011). Further, "[a] claim that is based on 'conduct of the mortgagee . . . prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure' is germane." *Vasquez*, 2019 WL 1529846, at *4 (quoting *Zebrowski v. Wells Fargo Bank, N.A.*, 2010 WL 2595237, at *6 (D.N.J. June 21, 2010) (Rodriguez, J.)).

Courts in this district have found that "[c]laims that loan servicers violated their statutory duties under RESPA are germane to foreclosure proceedings on the mortgaged property." *Gonzalez v. Wells Fargo Home Mortgage*, 2019 WL 4196142, at *3 (D.N.J. July 25, 2019) (Arpert, J.) (quoting *Puche v. Wells Fargo NA*, 256 F. Supp. 3d 540, 549 (D.N.J. 2017) (Walls, J.); and citing *Vasquez*, 2019 WL 1529846, at *4; *Collas v. Wells Fargo Bank, N.A.*, 2018 WL 6499706, at *4 (D.N.J. Dec. 11, 2018) (Salas, J.); *Siljee*, 2016 WL 2770806, at *10). Courts have also found that claims alleging fraud by a mortgagee prior to a foreclosure are germane to underlying foreclosure actions. *See Shibles*, 730 F. App'x at 107 (finding that the plaintiff "could have brought her state law fraud and breach of contract claims in the underlying foreclosure action" such that they were barred by the entire controversy doctrine); *Zebrowski*, 2010 WL 2595237, at *6 (finding that the plaintiff's RESPA and NJCFA claims "occurred prior to the foreclosure proceedings, and should have been raised as defenses or counterclaims there").

The Court is satisfied that Damouni's RESPA and fraud claims are germane to the state court foreclosure action. Count One alleges that defendants violated 12 C.F.R. § 1024.41(b) by "blatant[ly] disregard[ing] [Damouni's] loan modification application – despite their receipt of the application" which is "an error" under RESPA, 12 U.S.C. § 2605(e). (D.E. 1, Compl. ¶¶ 41-44.) Without specifically setting forth what Citimortgage did, she basically alleges that it ignored and failed to provide her timely written notice as to the status of her application. (*See id.*) This claim clearly arises out of "conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure" and should have been raised in the foreclosure action. *Zebrowski*, 2010 WL 2595237, at *6 (citation omitted).

Damouni's fraud claim asserts that Citimortgage[2] "failed to actually evaluate [her] for loss mitigation, failed to review and respond to submissions within the express time limit provided by law," and acted in bad faith by "unilaterally refus[ing] to take action on [her] loss mitigation application." (D.E. 1, Compl. ¶¶ 61-62.) Again, this claim relates to the conduct of the mortgagee and is germane to the foreclosure action.

Damouni cites two cases in support of her opposition to dismissal under the entire controversy doctrine. The first, *Genid v. J.P. Morgan Chase & Co.*, 2016 WL 7190033 (App. Div. Dec. 12, 2016), held that because requiring litigants to raise all claims arising out of a foreclosure would lead to delays in foreclosure actions, "Rule 4:64-5 limits the issues that may

---

[2] Damouni does not distinguish between Citimortgage and Cenlar in Counts One and Two, instead referring to the entities together as "defendants." However, the Court gleans from the complaint's factual background that Damouni is principally challenging Citimortgage's inaction surrounding her application. (*See* D.E. 1, Compl. ¶¶ 21-23.) But she alleges more than inaction with respect to Cenlar. She argues that Cenlar "affirmatively misrepresented" that it needed additional documents to complete her application and "attempted to proceed hastily to a sheriff's sale of Plaintiff's Property and failed to conduct an actual review" of her application. (*See id.* ¶¶ 24-30, 53-54.) As such, much of Count Two appears to be focused on Cenlar's, rather than Citimortgage's, actions. (*See generally id.* ¶¶ 48-62.)

be litigated within the foreclosure action, and does not require that all germane claims must be raised during the foreclosure action." *Id.* at *4. This ruling was rejected by the Third Circuit in *Shibles*, where the court found that the entire controversy doctrine's mandate "bars germane claims, counterclaims, and defenses that could have been brought in a prior foreclosure proceeding." 730 F. App'x at 107 n.6 (citations omitted).

Damouni's other case, *Sarlo v. Wells Fargo Bank, N.A.*, 175 F. Supp. 3d 412 (D.N.J. 2015) (Simandle, C.J.), is distinguishable. There, plaintiffs were allegedly told by Wells Fargo they were "pre-qualified" for a new type of loan modification that, for a fee of $2,415, permitted them to stop making mortgage payments while their application was pending. *Id.* at 417-18. Plaintiffs paid the fee, but after Wells Fargo offered them a loan modification over the phone that was higher than their current mortgage, they declined. *Id.* at 418. Wells Fargo told them that after they declined the modification in writing, they would be reevaluated. *Id.*

But a few months later, Wells Fargo filed a foreclosure action—apparently based on plaintiffs' failure to make mortgage payments while their loan application was pending. *See id.* at 417-19. The attorney that represented them in the foreclosure action "failed to keep Plaintiffs abreast of the lawsuit." *Id.* at 419. Three months after the foreclosure action was filed, the state court entered default judgment in favor of Wells Fargo. *Id.* Plaintiffs sued Wells Fargo in federal court, alleging violations of the Fair Debt Collection Practices Act, RESPA, and seven claims under New Jersey law—including breach of contract, negligent representation, breach of good faith and fair dealing, fraud, and slander of credit. *Id.* at 419-20. On these facts, the court found that the entire controversy doctrine did not bar plaintiffs' state law claims,[3] since they

---

[3] Plaintiffs consented to the dismissal of their federal claims. *Id.*

arose "entirely out of Defendant's alleged promise in 2009 to provide a loan modification," rather than from their 2003 mortgage contract. *Id.* at 421.

But here, there was no promise that Damouni's loss modification would be granted. She alleges only that during the nine months that its foreclosure proceeding was pending, Citimortgage didn't respond to her loss modification application, and its inaction, without more, gives rise to RESPA and NJCFA claims. The Court also notes that subsequent decisions in this district, including *Gonzalez*, 2019 WL 4196142—which dealt with a similar factual scenario and was litigated by Damouni's attorney—reach the same conclusion that RESPA and NJCFA claims are germane within the meaning of New Jersey Court Rule 4:64-5.

Having ruled that the entire controversy doctrine requires dismissal, the other grounds Citimortgage has raised in support of its motion need not be addressed.

**IV.    Conclusion**

For the foregoing reasons, Citimortgage's motion to dismiss is granted. An appropriate order accompanies this opinion.

Dated: December 1, 2025                          */s/ Katharine S. Hayden*
                                                  Katharine S. Hayden, U.S.D.J.

8